**No. 26-2119**

# In the United States Court of Appeals for the Fourth Circuit

AA ET AL.,

Appellees,

*v.*

UNITED STATES DEPARTMENT OF STATE ET AL.,

Appellants.

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA (NO. 1:25-CV-1819) (THE HONORABLE ANTHONY J. TRENGA)*

## APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY AND STAY PENDING APPEAL


Ghita Schwarz
Guadalupe Aguirre
Pedro Sepulveda
INTERNATIONAL REFUGEE ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Fl.
New York, NY 10004
Telephone: (516) 838-1655

Ryan T. Scarborough
William P. Ashworth
Danielle J. Barondess
Lindsay P. Hannibal
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000

# TABLE OF CONTENTS

Page


INTRODUCTION ........................................ 1

BACKGROUND ........................................ 3

ARGUMENT ........................................ 6

I. The Government Has Not Made a Strong Showing That It Is Likely to Succeed on the Merits. ........................................ 6

A. Appellees' claims are reviewable and justiciable. ........................................ 7

1. The consular non-reviewability doctrine does not preclude review of a categorical policy that supersedes individualized decision-making. ........................................ 7

2. The Government's categorical application of the Proclamations to derivative asylees is reviewable under the APA. ........................................ 10

B. The Proclamations' asylum exemptions apply to derivative asylees. ........................................ 12

C. Appellees have established valid procedural due process claims. ........................................ 14

D. The Proclamations are unconstitutionally vague as applied. ........................................ 16

II. The Balance of Equities and Public Interest Weigh Decisively Against a Stay. ........................................ 17

III. Vacatur Is the Ordinary Remedy in APA Cases and Is Appropriate Here. ........................................ 22

CONCLUSION ........................................ 24

## TABLE OF AUTHORITIES

### CASES

*AA v. U.S. Dep't of State*, 2026 WL 1498079 (E.D. Va. May 28, 2026) ... *passim*

*CACI, Inc. - Fed. v. U.S. Navy*, 674 F. Supp. 3d 257 (E.D. Va. 2023) ............21

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
924 F.3d 684 (4th Cir. 2019)............................................................10, 22, 23

*CLINIC v. Rubio*, 2026 WL 2455099 (S.D.N.Y. Aug. 21, 2026) ..................9, 22

*Corner Post, Inc. v. Bd. Of Governors of Fed. Res. Sys.*,
603 U.S. 799 (2024).......................................................................................24

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019) .......................................10

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) .....18, 24

*Dep't of State v. Muñoz*, 602 U.S. 899 (2024)..........................................9, 10, 16

*Doe v. Trump*, 284 F. Supp. 3d 1172 (W.D. Wash. 2018) .................................21

*Dorcas Int'l Inst. of R.I. v. USCIS*,
2026 WL 2042424 (D.R.I. July 15, 2026) ......................................18, 19, 20, 21

*Dorcas Int'l Inst. of R.I. v. USCIS*,
2026 WL 2364384 (1st Cir. Aug. 14, 2026) ....................................................18

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012)...............................16

*Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282 (4th Cir. 2022)..........................10

*Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024)......................11

*Kerry v. Din*, 576 U.S. 86 (2015) .......................................................................15

*LaMarche v. Mayorkas*, 2024 WL 2502929 (D. Mass. May 22, 2024) ...............9

*Make the Road N.Y. v. Noem*,
2025 WL 3563313 (D.C. Cir. Nov. 22, 2025)............................................22, 23

*Matushkina v. Nielsen*, 877 F.3d 289 (7th Cir. 2017)........................................9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................................................................................24

*Mullin v. Al Otro Lado*, 146 S. Ct. 2079 (2026) .................................................13

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
145 F.3d 1399 (D.C. Cir. 1998)....................................................................22

*Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026)......................................23

*Nat'l Tr. for Historic Pres. in the U.S. v. Nat'l Park Serv.*,
2026 WL 2276494 (D.C. Cir. Aug. 7, 2026)....................................................18

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................6, 17, 19

*Pietersen v. U.S. Dep't of State*, 138 F.4th 552 (D.C. Cir. 2025)........................8

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*,
174 F.4th 81 (D.C. Cir. 2026) ......................................................................23

*Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C. Cir. 1999)..........................11

*Salihi v. Blinken*, 2023 WL 8007348 (S.D. Cal. Nov. 17, 2023) .......................15

*Sesay v. United States*, 984 F.3d 312 (4th Cir. 2021)...........................................9

*Sunny v. Biden*, 573 F. Supp. 3d 759 (E.D.N.Y. 2021)........................................8

*Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*,
2026 WL 2322331 (5th Cir. Aug. 11, 2026) (en banc) ....................................23

*Trump v. CASA*, 606 U.S. 831 (2025) ...............................................................22

*Trump v. Hawaii*, 585 U.S. 667 (2018)..................................................................2

*Wilkinson v. Austin*, 545 U.S. 209 (2005) ..........................................................15

*Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*,
404 U.S. 1221 (1971)..............................................................................2, 6

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ...............................................................18

## STATUTES, REGULATIONS, AND RULES


Administrative Procedure Act ........ *passim*

5 U.S.C. § 706 ........ 5

8 U.S.C.
§ 1158 ........ *passim*
§ 1182 ........ 14

8 C.F.R. § 208.21 ........ 3, 12, 15

82 Fed. Reg. 13209 (Mar. 6, 2017) ........ 14

90 Fed. Reg. 24497 (June 4, 2025) ........ 13

9 FAM
203.5 ........ 15
203.5-2 ........ 16
203.5-7 ........ 4, 11
203.5-9 ........ 4, 11

## INTRODUCTION

Nothing warrants a stay here. The district court correctly read the plain text of Proclamations 10949 and 10998 exempting asylees or asylum seekers from entry restrictions as covering “follow-to-join” derivative asylees—the overseas spouses and children of U.S. asylees who have been vetted and granted the same status. Despite that exemption, Defendant-Appellants (the “Government”) have been categorically denying travel documents to this class of asylees, including Plaintiff-Appellees—Afghan men who risked their lives supporting the U.S. campaign against the Taliban, and the wives and children they left behind. The district court found this policy unlawful under the Administrative Procedure Act and awarded the standard remedy of vacatur, in addition to individualized relief for the named Plaintiffs. As a result of the judgment, five of these families—who would have obtained boarding foils over a year ago but for the unlawful application of the Proclamations—have finally reunited in the United States:





The Court should deny the Government's motion. The Government has not come close to meeting its burden for the "extraordinary relief" of a stay pending appeal. *Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971). Follow-to-join beneficiaries "are clearly 'seek[ing] asylum'" and thus exempt from the Proclamations. The district court's judgment does not disturb the Executive's authority to set immigration policy affirmed in *Trump v. Hawaii*, 585 U.S. 667 (2018); it only requires that the Government follow the plain language of its own policies in a way that does not violate the due process rights of asylees and their derivatives to a fair adjudication of their applications.

The equities decidedly favor Appellees. There is no emergency or concrete irreparable harm to the Government in requiring it to follow the letter of its own policies. Though the Government raises the specter of national security, this is a generalized, post-hoc justification unsupported by the administrative record that ignores the full scope of vetting tools that remain at the Government's disposal and the extensive vetting derivative asylees undergo. Meanwhile, individuals affected by the policy face ongoing harm, both from family separation and continued exposure to conditions that prompted them to seek asylum in the first place. This injury is not theoretical:

The two Appellee families still overseas have already taken steps to leave Afghanistan in reliance on the district court's order. In doing so, they have exposed themselves to Taliban retaliation, and a stay would leave them unable to escape. The public has no interest in perpetuating unlawful agency action that thwarts Congress's intent to protect family unity for asylees.

The Government's request for an immediate administrative stay and a stay pending appeal should be denied.

## BACKGROUND

Congress created the "follow-to-join" derivative asylum pathway in Section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(3)(A), providing that the "spouse or child … of an alien who is granted asylum … may … be granted the same status as the alien if accompanying, or following to join, such alien." To obtain derivative asylum status, the principal asylee files a Form I-730 petition with USCIS, which is within the agency's sole discretion to approve. 8 C.F.R. § 208.21(d).

Once USCIS approves the petition, the next step is the travel determination. If the derivative beneficiary is in a country where USCIS does not maintain a field office, USCIS sends the petition to a State Department embassy or consulate to conduct a "travel eligibility determination," whose

purpose is to verify the beneficiary's identity, confirm the qualifying relationship, determine whether any bars to asylum exist, and assess whether specific derogatory information about the applicant warrants a denial. Compl. ¶ 117, Dkt. No. 1; 9 FAM 203.5-7(a), 203.5-9(b)(12). Consular officers may not readjudicate the Form I-730 petition or deny asylum status. Compl. ¶¶ 117–28, Dkt. No. 1. If the derivative asylee is eligible for travel, the State Department is required to issue a boarding foil. Pls.' Mot. Summ. J. at 3, Dkt. No. 111.[1]

Since June 2025, the Government has not been following this process. Instead, it has asked derivative asylees to complete medical exams and attend consular interviews with preordained denial outcomes, often at considerable risk and expense. Those denials have been solely based on the Proclamations' ban on entry of nationals from certain countries, including Afghanistan, even though the Proclamations expressly exempt asylees and individuals "seeking asylum."

Seven families affected by that policy filed this case in October 2025, raising administrative law and constitutional claims. The district court denied

[1] The Government adopted in full Plaintiffs' statement of undisputed facts in its Motion for Summary Judgment. Defs.' Mot. Summ. J. at 2, Dkt. No. 121.

the Government's motion to dismiss in May 2026, holding that the policy was reviewable under the APA and not barred by consular non-reviewability. *AA v. U.S. Dep't of State*, 2026 WL 1498079, at *4–5, 7 (E.D. Va. May 28, 2026). The court also held that Derivative Appellees were clearly "seek[ing] asylum" and therefore fall within the Proclamations' asylum exemption—a legal determination the Government conceded decided the case in Appellees' favor. *Id.* at *6.

On July 29, 2026, the district court granted summary judgment in Appellees' favor on their APA claims and applied the standard APA remedy by vacating the Government's unlawful policy under 5 U.S.C. § 706(2)(A). Order (Jul. 29, 2026), Dkt. No. 128. The district court also ordered the Government to issue boarding foils or expedited travel-eligibility determinations to the seven families that had brought the case. *Id.*[2]

Despite this vacatur having "immediate effect," the Government did not implement it. Two weeks after the judgment, it initiated this appeal and

[2] The district court's Motion to Dismiss Order contains the bulk of its analysis and rationale concerning the various legal issues Appellants raised at both the pleading and summary judgment stages. The Final Order granting judgment in Appellees' favor relied on the "reasons stated from the bench and in [the district court's] May 28, 2026 Memorandum Opinion and Order denying Appellants Motion to Dismiss." Order (Jul. 29, 2026), Dkt. No. 128.

simultaneously sought a stay in the district court on August 12, 2026. Dkt. Nos. 136, 137. The district court denied the stay on August 28. Dkt. No. 152. On September 5 and 7, five of the Derivative Appellee families were admitted into the United States. The Government filed this Motion on September 9, within an hour of informing Appellees that it had finally instructed posts to stop applying the Proclamations to derivative asylees in accordance with the district court's order.

## ARGUMENT

A stay pending appeal requires that the Government demonstrate (1) a strong likelihood of success on the merits; (2) irreparable harm absent a stay; (3) that the balance of equities favors the movant; and (4) that the stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). If the Government fails to prove any one of these elements, denial of the stay is warranted. A stay is "extraordinary relief," and the movant bears a "heavy burden." *Scott*, 404 U.S. at 1231.

### I. The Government Has Not Made a Strong Showing That It Is Likely to Succeed on the Merits.

To obtain a stay pending appeal, the Government must first demonstrate a strong likelihood of success on the merits—a burden it cannot meet here. First, Appellees' claims are justiciable and reviewable because they

challenge a categorical policy foreclosing individualized analysis—not any particular consular officer's exercise of discretion. Second, the Proclamations' express asylum exemptions plainly cover derivative asylees who, by statutory definition, are seeking the same status as their family members already granted asylum. And third, Appellees have established both procedural due process violations and unconstitutional vagueness of the Proclamations' text. The Government offers no persuasive basis to disturb these holdings.

### A. Appellees' claims are reviewable and justiciable.

The Government's reviewability and justiciability arguments fail for two reasons: The consular non-reviewability doctrine does not insulate categorical policies that require denial and thus override discretion entirely, and the travel-eligibility determination is not committed to agency discretion because statutory and regulatory guidelines constrain that determination.

#### *1. The consular non-reviewability doctrine does not preclude review of a categorical policy that supersedes individualized decision-making.*

Invoking the consular non-reviewability doctrine, the Government claims that consular officers' determinations denying boarding foils to the five families who were already interviewed—based solely on the State Department's policy applying the Proclamations' prohibition—are

unreviewable.[3] Mot. 12–14. But the consular non-reviewability doctrine shields a consular officer's exercise of individualized discretion; it does not preclude review of categorical policies that foreclose discretionary analysis altogether, which is what Appellees challenged. *See Sunny v. Biden*, 573 F. Supp. 3d 759, 771 (E.D.N.Y. 2021) ("[N]ot every legal challenge that touches on the admission or exclusion of foreign nationals is foreclosed by consular non-reviewability."). Because Appellees challenge the lawfulness of a blanket "policy governing consular decisions"—not any "particular" determination based on a consular officer's judgment—there is no discretionary judgment to shield from review, and the doctrine does not apply. *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 555, 560 (D.C. Cir. 2025).

The district court correctly applied this distinction, holding that although individual consular decisions typically are not reviewable, courts *can* review "challenges to the lawfulness of regulations or policies governing consular decisions." *AA*, 2026 WL 1498079, at *7 (citing *Pietersen*, 138 F.4th at 560). Appellees "do not challenge any 'discretionary decisions of the

[3] These families have now been admitted into the United States as of Monday, September 7, 2026. The Government does not argue that the consular non-reviewability doctrine bars judicial review as to Families FF and GG—who have not yet interviewed and had travel-eligibility determinations. *See* Mot. 13.

consular and embassy staff who are implementing it,' but instead" the Government's "blanket application of the Presidential Proclamations … without any regard to their individualized circumstances." *Id.; accord CLINIC v. Rubio*, 2026 WL 2455099, at *8 (S.D.N.Y. Aug. 21, 2026) (doctrine inapplicable where policy "overrides consular discretion and decision-making").

The Government's cited cases do not support a different result—each involved judicial review of an individualized, fact-bound determination. *See Dep't of State v. Muñoz*, 602 U.S. 899, 905 (2024) (visa denied based on finding that applicant was a member of a transnational criminal gang); *Sesay v. United States*, 984 F.3d 312, 314 (4th Cir. 2021) (visa denied for age misrepresentation); *Matushkina v. Nielsen*, 877 F.3d 289, 291 (7th Cir. 2017) (applicant deemed inadmissible because she lied to consular officer about her daughter's student visa status); *see also LaMarche v. Mayorkas*, 2024 WL 2502929, at *5 (D. Mass. May 22, 2024) (consular non-reviewability doctrine could bar judicial relief if denial rests on individualized derogatory information rather than application of a blanket policy). In other words, the Government's cited cases involved unreviewable consular decisions because they challenged

the result of a consular officer's individualized determination, not the lawfulness of the policy or criteria used to reach that decision.

#### 2. *The Government's categorical application of the Proclamations to derivative asylees is reviewable under the APA.*

Appellees' claims are likewise reviewable under the APA. The APA "embodies a 'basic presumption of judicial review,'" overcome only where a statute provides no meaningful standard against which to judge agency discretion. *Dep't of Commerce v. New York*, 588 U.S. 752, 771 (2019). Under this Circuit's *Holbrook* test, courts consider (1) whether the action has "traditionally been 'committed to agency discretion'" and (2) whether the statute "intentionally limits agency discretion by setting guidelines." *Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 290 (4th Cir. 2022). Both prongs favor reviewability.

As to the first prong, the challenged action is not an individualized determination but a "broad agency enforcement policy" applying the Proclamations categorically against all derivative asylees. *AA*, 2026 WL 1498079, at *5. *Cf. Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 699 (4th Cir. 2019). Consular officers here did not weigh individual factors, as they did in the cases cited by the Government. Mot. 14–15; *see Muñoz*, 602

U.S. at 905; *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1155 (D.C. Cir. 1999) (visa refused for applicant's involvement in drug trafficking); *Karimova v. Abate*, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (visa refused while applicant underwent administrative processing to verify qualifications). Rather, the Government applied a blanket ban without regard to individual circumstances or other discretionary considerations, *e.g.*, "[c]riminal convictions" or "immigration fraud." 9 FAM 203.5-9(b)(12)(c).

As to the second prong, Congress has established detailed statutory guidelines governing derivative asylees who are "granted the same status" as principals. 8 U.S.C. § 1158(b)(3)(A). The State Department's policies cabin consular officers' discretion to specified items: verifying identity, confirming the qualifying relationship, and determining whether any statutory bars exist. 9 FAM 203.5-7(a)(1). This framework led the district court to correctly hold that consular discretion to issue a boarding foil is subject to "meaningful standards for judicial review." *AA*, 2026 WL 1498079, at *5.

Appellees contend that the agency was wrong to apply the Proclamations to derivative asylees at all—a legal question, not a discretionary judgment. Courts routinely adjudicate such questions. *Id.* at *7. Because this

case challenges unlawful criteria rather than discretionary determinations, those criteria are subject to APA review.

### B. The Proclamations' asylum exemptions apply to derivative asylees.

The Government contends that the Proclamations' asylum exemptions cannot apply to I-730 beneficiaries abroad because asylum is available only to individuals *within* the United States. Mot. 15–18. That argument ignores the statutory pathway for I-730 beneficiaries. Section 1158(b)(3)(A) expressly permits family members abroad to derive asylum status from a principal asylee's existing grant—that is, people who are *not* independently applying for asylum in the United States. Similarly, USCIS's regulations distinguish derivatives located in the United States versus abroad and allow principal asylees to seek the same status for their overseas spouses and children. *Compare* 8 C.F.R. § 208.21(c) ("Spouse or child in the United States"), *with* 8 C.F.R. § 208.21(d) ("Spouse or child outside the United States"). Nowhere in the derivative asylum statute or USCIS's regulations are beneficiaries required to first present themselves at a U.S. port-of-entry before their principals can seek derivative asylum status for them by filing an I-730 petition. 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. §208.21(d). By definition, I-730 applicants are overseas. And, tellingly, the Government has never identified

*what* category overseas I-730 beneficiaries fall into if they are not, at minimum, "seeking asylum" status as derivatives. This pathway to asylum therefore is facially encompassed in the Proclamations' "seeking asylum" exemption.

*Mullin v. Al Otro Lado*, 146 S. Ct. 2079 (2026), is inapposite. That case addressed whether an individual in Mexico has "*arrive[d]* in the United States" sufficient to initiate an asylum application under 8 U.S.C. § 1158(a)(1). *Id.* at 2090. But derivative asylees are not filing new asylum applications under Section 1158(a)(1); they derive status through a different statutory pathway that grants derivative asylee status to a spouse or child who, "*if not otherwise eligible for asylum under this section*," may "be granted the same status" as the principal. 8 U.S.C. § 1158(b)(3)(A) (emphasis added). The Government's geographic reading would render this follow-to-join pathway a nullity: The entire premise of "following to join" is that one family member is here and the other is abroad.

The Government's attempt to narrowly construe the "seek asylum" provision fares no better. Mot. 16–17. The provision means what it says: "Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum." Proclamation 10949, 90 Fed. Reg. at 24504. The

State Department took the position earlier that preceding proclamations and executive orders containing identical language did not apply to derivative asylees (*see* Compl. ¶¶130–35, Dkt. No. 1)—a position abandoned without explanation starting with Proclamation 10949.

The absence in the current Proclamations of the explicit boarding foil exemption present in the 2017 proclamation does not justify this reversal. Mot. 17 n.8. Another Section 1182(f) entry-suspension from that same year, Executive Order 13780, also lacked the explicit boarding foil exemption but contained the same "shall not be construed to limit the ability of an individual to seek asylum" language. 82 Fed. Reg. 13209, 13218 (Mar. 6, 2017). The Government nonetheless determined that asylees were exempted and permitted them to continue receiving boarding foils. Compl. ¶¶ 130–32, Dkt. No. 1. Given the Government's own prior conclusion that identical language without an explicit carve-out did not bar derivative asylees, the absence of such a carve-out in Proclamations 10949 and 10998 cannot bear the weight the Government places on it.

### C. Appellees have established valid procedural due process claims.

Procedural due process protects parties when a statute or regulation creates "an expectation" that they would not suffer deprivation of a liberty

interest without fair procedures. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Congress created precisely such an expectation here. The INA provides that the "spouse or child … of an alien who is granted asylum" may "be granted the same status," 8 U.S.C. § 1158(b)(3)(A), and comprehensive regulations specify procedures for adjudicating those claims. *See* 8 C.F.R. § 208.21; 9 FAM 203.5. This framework gives principal and derivative asylees "their own entitlement and a 'strong expectation'" to have their asylum claims "fairly adjudicated"—and thus a cognizable due process interest in the adjudicative procedures. *AA*, 2026 WL 1498079, at *7–8 (citing *Kerry v. Din*, 576 U.S. 86, 98 (2015)).

The Government's policy deprives principal and derivative asylees of that process entirely. Even assuming USCIS's decision to approve an I-730 petition may be discretionary, the State Department's procedure for determining travel eligibility for *approved* beneficiaries is not. *See Salihi v. Blinken*, 2023 WL 8007348, at *6 (S.D. Cal. Nov. 17, 2023) (noting the State Department's "nondiscretionary duties" to process I-730 cases "to conclusion"). Principal asylees and their derivatives expect that the State Department will fulfill its obligation to issue a boarding foil to an approved I-730 beneficiary so long as the beneficiary can "establish their identity and a qualifying relationship with the asylee" and is not "subject to any bars, or

inadmissibilities, or reasons for denial." Pls.' Mot. Summ. J. at 3 (Undisputed Facts), Dkt. No. 111; 9 FAM 203.5-2(a). Since June 2025, the Government has improperly applied the Proclamations as "bars" to derivative asylees who are "otherwise eligible" to receive boarding foils. That is not the procedure they are entitled to expect.

For that reason, *Muñoz* is a red herring. *Muñoz* addressed whether a U.S. citizen has a *fundamental liberty interest* in her spouse's visa application—not whether a procedural due process right exists under a statutory scheme. 602 U.S. at 911–16. Appellees have never claimed a substantive constitutional right for foreign nationals to enter the United States; they claim a *procedural* due process right to have the statutory and regulatory scheme for derivative asylum fairly followed. This distinction is dispositive, and the district court correctly rejected the Government's *Muñoz* argument. *AA*, 2026 WL 1498079, at *7–8.

### D. The Proclamations are unconstitutionally vague as applied.

A law is unconstitutionally vague if it fails to make clear to regulated parties what is required or lacks the precision necessary to avoid arbitrary enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253, 258 (2012). The Government's claim that the Proclamations "do not proscribe any

conduct for which Plaintiffs must have fair notice," Mot. 21, is counterfactual—they do exactly that. As written, the Proclamations do not provide fair notice that derivative asylees—who along with their principals have a due process interest in proper adjudication of their travel-eligibility determinations—will be affected despite the exemption for asylees and those seeking asylum. Yet, the Government has applied them to proscribe consular officers from issuing travel documents to these derivative asylees. The Government's reversal from its 2017 position that executive orders and proclamations containing identical language did *not* apply to derivative asylees encapsulates the arbitrariness of the Government's conduct here.

## II. The Balance of Equities and Public Interest Weigh Decisively Against a Stay.

The remaining *Nken* factors further counsel against a stay. The Government has not demonstrated that it will suffer irreparable injury without one, while a stay would seriously harm derivative asylees, including the two Appellee families still overseas, and the public.

The Government asserts that, absent a stay, it will suffer irreparable injury to "the Executive's constitutional and statutory duty to administer the immigration system, and to protect national security by addressing countries with recognized vetting deficiencies." Mot. 22. The Supreme Court has warned

against precisely this: "[N]ational-security concerns must not become a talisman used to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins.'" *Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) (citation omitted); *e.g.*, *Nat'l Tr. for Historic Pres. in the U.S. v. Nat'l Park Serv.*, 2026 WL 2276494, at *42 (D.C. Cir. Aug. 7, 2026) ("[N]ational security … arguments are not an automatic get-out-of-law-free card."). The Government's argument, if accepted, would conceivably justify a stay in all immigration cases decided adversely against the government. That is not the law.

*Dorcas* is instructive. *Dorcas Int'l Inst. of R.I. v. USCIS*, 2026 WL 2042424 (D.R.I. July 15, 2026). There, the district court denied a stay, holding that a "new declaration" from USCIS was evidence of the government's lack of irreparable injury. *Id.* at *2. The court questioned why this declaration was not part of the administrative record and why the government produced it only after losing, noting that "[a]n agency must defend its actions based on the reasons it gave when it acted." *Id.* at *9–10 (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 24 (2020)).[4]

[4] The First Circuit largely denied the government's subsequent request for a stay pending appeal. *Dorcas Int'l Inst. of R.I. v. USCIS*, 2026 WL 2364384, at *1 (1st Cir. Aug. 14, 2026).

In relying on two declarations mirroring the one rejected in *Dorcas*,[5] the Government belatedly recharacterizes this case from one predicated on legal interpretation to one implicating "national security" judgments. Mot. at 23–24. Like the declaration in *Dorcas*, the declarations here offer "altogether new reasons after-the-fact" and are "post-hoc rationalizations" for why the Government applied the Proclamations to derivative asylees—which the Government itself has framed as solely an issue of legal interpretation. *See Dorcas*, 2026 WL 2042424, at *9–10 (citations omitted).

Even if the Government's national security arguments were taken at face value, they still fall short. The Supreme Court has emphasized that a party must show it "*will* be irreparably injured," not simply some "possibility of irreparable injury." *Nken*, 556 U.S. at 434–35 (emphasis added). The Government's claimed harm—generalized national security concerns and potential difficulty removing individuals if derogatory information later arises—is entirely speculative. And the district court's order does not, as the

[5] *Compare, e.g.*, Dkt. No. 137-2 ¶ 11 ("The main harm of the Court's vacatur is that until USCIS is prepared to fully implement maximum vetting capabilities, cases will be adjudicated without the benefit of review through maximum vetting."), *with Dorcas Int'l Inst. of R.I. v. USCI*S, No. 1:26-cv-132 (D.R.I. June 19, 2026), Dkt. No. 46-1 ¶ 13 ("The main harm of the Court's vacatur is that until USCIS is prepared to fully implement maximum vetting capabilities, cases will be adjudicated without the benefit of review through maximum vetting.").

Government claims, require it to "adjudicate" applications "without applying … any of the regular, longstanding medical and security vetting procedures." Mot. 22–23. The order merely mandates that the Government no longer deny boarding foils to derivative asylees *based solely on the unlawful application of the Proclamations*. The order has no impact on statutory travel-eligibility or vetting processes, which is precisely why the seven Appellee families received different relief based on whether they had already been processed and deemed "otherwise eligible" to travel.

The Government does not dispute that the five already-interviewed families were found "otherwise eligible"—meaning vetting revealed no concerns. Instead, the Government speculates it would face "logistical obstacles" *if* removal was "subsequently required because of later-discovered derogatory information." Mot. at 24. "These statements hardly exude certitude or definiteness of irreparable harm." *Dorcas*, 2026 WL 2042424, at *9.

The district court analyzed the merits thoroughly and concluded the Government's policy was unlawful. Allowing continued enforcement of the policy applying the Proclamations to follow-to-join asylees pending appeal would thwart Congress's intent in enacting Section 208(b)(3), which protects

the unity of families granted asylum in the United States. The public interest is served when the government honors its obligation to reunite families—particularly families that include the spouses and children of allies granted asylum because of the mortal threat they faced for supporting American forces in Afghanistan. *See CACI, Inc. - Fed. v. U.S. Navy*, 674 F. Supp. 3d 257, 279 (E.D. Va. 2023) ("[T]here is generally no public interest in the perpetuation of unlawful agency action."); *Doe v. Trump*, 284 F. Supp. 3d 1172, 1179 (W.D. Wash. 2018) ("Where the Government's actions thwart Congressional intent … the public interest is best served by curtailing those actions.").

Asylees and their derivatives, not the Government, are the ones who stand to suffer irreparable harm. A stay would cause continued family separation and exposure to the circumstances that led them to seek asylum. *See Dorcas*, 2026 WL 2042424, at *10. The two Appellee families awaiting processing have already taken significant and irreversible steps in reliance on the district court's judgment and are days away from receiving the visas they need to undertake the perilous journey from Afghanistan for processing. A stay would leave them in indefinite uncertainty, unable to return to the status quo ante without heightened risks to their safety. *See Doe v. Trump*, 284 F. Supp. 3d at 1181.

## III. Vacatur Is the Ordinary Remedy in APA Cases and Is Appropriate Here.

The Government's vacatur argument is the latest failed attempt to extend *Trump v. CASA*, 606 U.S. 831 (2025), to APA remedies. Vacatur was established as the ordinary APA suit even against the complete relief the Government invokes. *See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."). *CASA* did not change that. In its opinion, the Supreme Court expressly stated that "[n]othing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *CASA*, 606 U.S. at 847 n.10. *CASA* decided only whether "a federal court's equitable authority under the Judiciary Act" permits universal injunctions. *Id.* at 847; *CLINIC*, 2026 WL 2455099, at *24 (finding *CASA* "inapposite" where plaintiffs sought APA vacatur).

For several additional reasons, the Government's "procrustean effort to stretch *CASA*'s plaintiff-specific remedial framework onto the APA" cannot succeed. *Make the Road N.Y. v. Noem*, 2025 WL 3563313, at *36 (D.C. Cir. Nov. 22, 2025).

*First*, *CASA* interprets the Judiciary Act of 1789, not the APA adopted in 1946. The D.C. Circuit has explained that "founding-era history and tradition of equity that underlay *CASA* says little about the framework for judicial review that informed the APA's remedial provisions." *Id.* at *36. And "caselaw suggests" that, "at the time of the APA's enactment, relief ordered by courts in analogous circumstances … was [not] confined to party-specific remedies." *Id.*

*Second*, vacatur is conceptually "distinct" and "functions quite differently" from universal injunctive relief. *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 119–20 (D.C. Cir. 2026). Injunctions operate against *litigants*; vacatur operates against *agency action*—nullifying unlawful conduct. *Id. Accord Make the Road*, 2025 WL 3563313, at *35 ("Unlike judicial review of statutes … the APA and related statutory provisions go further by empowering the judiciary to act directly against the challenged agency action.").

*Third*, the circuits unanimously agree that complete relief through vacatur remains appropriate after *CASA*. *See, e.g.*, *id.*; *Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 2026 WL 2322331, at *8 (5th Cir. Aug. 11, 2026) (en banc); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026)

("Textually, it would be difficult to square the plain meaning of a 'set aside'—to 'cancel, annul, or revoke'—with the plain meaning of an injunction.").

*Fourth*, the district court's vacatur is consistent with Supreme Court practice. *See, e.g.*, *Regents of Univ. of Cal.*, 591 U.S. at 9; *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 (1983). This precedent implements the exact remedy Congress prescribed in the APA. *See also Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J., concurring) (noting that the Supreme Court "has affirmed countless decisions that vacated agency actions, including agency rules").

At best, the Government has identified an unresolved issue about the scope of *CASA*'s holding, but open questions of law are not enough to warrant the "extraordinary relief" of a stay.

## CONCLUSION

For the foregoing reasons, this Court should deny the Government's Emergency Motion for an Administrative Stay and Stay Pending Appeal. In addition, in light of the immediate and life-threatening harm the two Appellee families stand to suffer from a stay, Appellees further request that the Court grant oral argument on the Motion.

Dated: September 11, 2026

Respectfully submitted,

*s/ Danielle J. Barondess*

Ryan T. Scarborough
William P. Ashworth
Danielle J. Barondess
Lindsay P. Hannibal
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
rscarborough@wc.com
washworth@wc.com
dbarondess@wc.com
lhannibal@wc.com

Ghita Schwarz
Guadalupe Aguirre
Pedro Sepulveda
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, NY 10004
Telephone: (516) 838-1655
gschwarz@refugeerights.org
laguirre@refugeerights.org
psepulveda@refugeerights.org

*Counsel for Appellees*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 27(d) and 32(a), I certify that the text of this brief is double-spaced, proportionally spaced CenturyExpd BT type; the footnotes are single-spaced, proportionally spaced CenturyExpd BT type; and the brief contains 4,878 words, which does not exceed the 5,200-word limit for responses to motions.

Dated: September 11, 2026

*s/ Danielle J. Barondess*
DANIELLE J. BARONDESS
Attorney for Appellees

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Dated: September 11, 2026

*s/ Danielle J. Barondess*
DANIELLE J. BARONDESS
Attorney for Appellees