No. 26-2119

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

AA, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
No. 1:25-cv-1819-AJT-WEF (Hon. Anthony J. Trenga)

# APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY AND STAY PENDING APPEAL


BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Director
Office of Immigration Litigation

JESSICA R. LESNAU
Senior Litigation Counsel

TIA HOCKENBERRY
JOSEPH MCCARTER
JESSE MONTES
JASON ZUBATA
Trial Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Sta.
Washington, D.C. 20044

## INTRODUCTION

Plaintiffs' opposition provides no reason for this Court to sanction the district court's Order commanding that the State Department issue "boarding foils" to five Plaintiff families, even though the President and consular officials have determined they cannot be admitted. As to the universal vacatur, Plaintiffs do not even respond to the Government's argument that the vacatur should be *stayed* at least as to the non-parties—an outcome that would cause Plaintiffs no harm and ameliorate the significant harms the United States is experiencing from the district court's sweeping ruling. In any event, Plaintiffs and the district court misread the Proclamations to except follow-to-join asylees from the Proclamations' travel prohibitions.

The United States is being irreparably harmed each day the district court's Order remains in effect. The Order forces the Government to process and admit aliens from countries that lack adequate vetting procedures, jeopardizing national security. The equities decidedly favor the Government. Plaintiffs' reliance on a legally erroneous court order cannot ameliorate the significant harm to the United States from having to admit aliens before vetting improvements occur. And Plaintiffs present

no reasons that show they would be harmed from this Court's staying the district court's vacatur as to non-parties. Indeed, this Court could only deny a stay as to non-parties by making arguments for Plaintiffs—an impulse the Supreme Court has repeatedly admonished lower courts not to indulge. *See*, *e.g.*, *Margolin v. NAIJ*, 608 U.S. 339, 342 (2026); *United States v. Sineneng-Smith*, 590 U.S. 371, 379-80 (2020).

This Court should grant an immediate administrative stay and a stay pending appeal.

## ARGUMENT

### I. At minimum, the district court's universal remedy should be stayed as to non-parties.

Plaintiffs focus their entire opposition to scope-of-relief on whether vacatur applies beyond the parties. Mot.22-24. Yet Plaintiffs (like the district court) fail to respond at all to the Government's alternative request that the district court's vacatur be *stayed* as to non-parties. Those are two different things.

A stay of the vacatur as to non-parties would allow this Court to adjudicate the merits of the district court's decision while Plaintiffs here would receive "complete relief" in the meantime. *See Trump v. CASA*, 606 U.S. 831, 851 (2025) ("'Complete relief' is not synonymous with 'universal

relief.' It is a narrower concept."). Plaintiffs do not (and could not) assert harm from such a course of action; their opposition instead focuses on the harm to the "seven Appellee families" here. Opp.20. Plaintiffs have thus forfeited the issue of staying the vacatur as to non-parties.

In any event, Plaintiffs are wrong that vacatur in this case should extend beyond the named parties. Universal vacatur conflicts with the complete relief principle articulated in *CASA* and is not an appropriate remedy under the APA. Mot.25. But the Court need not resolve that question here since Plaintiffs effectively offer no argument against *staying* the vacatur as to non-parties.

## II. Defendants, though, are likely to succeed on the merits.

### A. Plaintiffs' claims are neither reviewable nor justiciable.

#### 1. The consular non-reviewability doctrine precludes Plaintiffs' claims and the relief they received.

Plaintiffs (at 8) invoke *Pietersen v. Department of State*, 138 F.4th 552 (D.C. Cir. 2025), but in that case the appellants challenged only the *prospective* application of a State Department policy. Although the appellants did challenge the application of the policy to their prior visa denials in district court, on appeal they did not dispute that their

"challenges to … prior visa denials [were] unreviewable under the consular nonreviewability doctrine." *Id.* at 555. *Pietersen* thus says nothing about the application of the consular nonreviewability doctrine to the denial of Plaintiffs' boarding foils.

Plaintiffs' other authorities suffer the same problems. Plaintiffs (at 9) invoke *CLINC v. Rubio*, No. 26-cv-858, 2026 WL 2455099, at *8 (S.D.N.Y. Aug. 21, 2026), but that case also involves only the prospective application of a policy, not individual visa denials. The same is true of *Sunny v. Biden*, 573 F. Supp. 3d 759, 770-71 (E.D.N.Y. 2021) (Opp.8).

The doctrine of consular non-reviewability underscores why the district court's review and reversal of boarding-foil denials was inappropriate here. The "admission and exclusion of foreign nationals is a fundamental sovereign attribute largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 703 (2018) (quotation omitted). And "the action of an executive officer to admit or exclude a noncitizen is final and conclusive" and "federal courts cannot review those decisions." *Department of State v. Muñoz*, 602 U.S. 899, 907-08 (2024); *see Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021).

The issue is particularly problematic here where the district court conducted a "full-blown merits review" of the Proclamations' application to the Plaintiffs, even though the consular non-reviewability doctrine does not permit consideration of "whether an official properly construed and applied the law." *See Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017) (rejecting effort to review "whether the officer properly construed and applied" a statute).[1]

Plaintiffs also claim (at 8 n.3) that Defendants do not contend that consular non-reviewability barred the district court from ordering the agency to interview Plaintiff families FF and GG. But the doctrine also precludes that aspect of the court's Order because what Plaintiffs ultimately seek through compelled interviews is the issuance of boarding foils.

[1] The most the doctrine permits is an inquiry into whether the officer had a facially legitimate and bona fide reason for the decision, but that inquiry is allowed only when a plaintiff has shown the decision burdened a constitutional right, *Muñoz*, 602 U.S. at 908, which Plaintiffs did not do here.

### 2. The APA does not authorize review of consular decisions.

Plaintiffs' contentions that the APA somehow authorizes review of consular decisions merely repeat the same errors as Plaintiffs' reasoning on the consular non-reviewability doctrine. *See* Opp.10-12. And while Plaintiffs argue that the Government's denial of boarding foils to "follow-to-join" asylees is not committed to agency discretion by law, they ignore the additional *dispositive* limitations on APA review the Government raised (at 10-12, 15).

The APA's waiver of sovereign immunity does not "affect[] other limitations on judicial review," like the long-established consular non-reviewability doctrine. 5 U.S.C. §702(1); *see* Mot.15 (citing *Saavedra Bruno v. Albright*, 197 F.3d 1135, 1158 (D.C. Cir. 1999)). And boarding-foil applicants have no right of admission to the United States, so Plaintiffs cannot be "aggrieved" by a denial, as the APA requires as a precondition for a cause of action. Mot.15 (citing 5 U.S.C. §702).

In any event, Plaintiffs' opposition makes many of the same errors in contending that APA review is available here that Plaintiffs make when arguing against the consular non-reviewability doctrine's applicability. Plaintiffs primarily contend that all they are doing is

challenging a State Department policy and not necessarily any individual determination. Opp.7-10. But that revisionist recasting flouts Plaintiffs' actual claims and the relief the district court actually ordered. Plaintiffs challenged the denial of specific boarding foils here and obtained a remedy overruling consular officers' decisions and ordering the Government to provide boarding foils to Plaintiff families. That is precisely what the consular non-reviewability doctrine precludes.

Plaintiffs also err in arguing that boarding-foil decisions are not committed agency discretion by law and are thus unreviewable under the APA. Opp.10-12. Plaintiffs argue there are judicially manageable standards for reviewing a consular officer's *ultimate decision* to issue a boarding foil to a follow-to-join beneficiary with an approved petition by pointing out the topics on which the officer must make decisions. *See* Opp.11 (citing the officer's obligation to decide the beneficiary's identity, confirm the qualifying relationship, and determine if any statutory bars to asylum exist). But statutes and regulations dictating the *types* of decisions a consular officer must make do not create a judicially manageable standard for reviewing the decisions themselves.

Further, Plaintiffs err in relying (at 10) on *Casa De Maryland v. DHS*, 924 F.3d 684, 699 (4th Cir. 2019), for the proposition that boarding-foil decisions are not committed to agency discretion by law. Unlike here, the *Casa* plaintiffs did not challenge an executive officer's discretionary decision. *See id.* at 698 ("For starters, the Acting Secretary did not exercise her discretion in an individual case.").

**B. Proclamation 10949 and 10998 do not except Plaintiffs.**

The Derivative Plaintiffs were plainly not "seek[ing] asylum" under the Proclamations' text. The INA distinguishes between applications for asylum under 8 U.S.C. §1158(a) and derivative asylum under 8 U.S.C. §1158(b)(3). Plaintiffs could obtain such derivative status even if they were "not otherwise eligible for asylum," 8 U.S.C. §1158(b)(3)(A)—in other words, they are only eligible for asylum as derivatives under §1158(b)(3)(A) and not as standalone applicants under §1158(a). *See Niang v. Gonzales*, 492 F.3d 505, 512 n.11 (4th Cir. 2007). It follows that "seek asylum" and "follow to join" are not interchangeable concepts. Derivative asylees obtain their derivative status by virtue of another alien's prior grant of asylum, and are not themselves "seek[ing] asylum." In fact, under §1158(a), they cannot seek asylum.

Plaintiffs contend (at 12-13) that I-730 beneficiaries are "by definition" located overseas. Not so. Plaintiffs themselves acknowledge (at 12) that beneficiaries could be located in the United States or abroad. Thus, it remains true that beneficiaries located abroad cannot be "seeking asylum." *See* Mot.15-16. And as the Government pointed out in its motion (at 17 n.9), a 2017 Proclamation included a specific boarding-foil exception, yet the Proclamations challenged here do not.

Plaintiffs' primary response is that another 2017 entry restriction—Executive Order 13780—included the same language as the Proclamations here, and the State Department interpreted the provision like Plaintiffs do here. Opp.14. That cannot bear the weight Plaintiffs and the district court put on it. The instant Proclamations are the *President's*, not the State Department's. So the question is what the President intended, not what the State Department previously interpreted similar language to say. In any event, E.O. 13780, unlike the Proclamations here, contained language allowing for the exception of follow-to-join asylees with boarding foils. *See* 82 Fed. Reg. 13,209, 13,214 (Mar. 9, 2017) (excepting "any foreign national who has a document other than a visa

… that permits him or her to travel to the United States and seek entry or admission, such as an advance parole document”).

### C. Plaintiffs’ due process claim fails.

Plaintiffs concede that they do not “claim[] a substantive constitutional right” for their foreign-national family members to enter the United States. Opp.16. They instead frame their challenge as only sounding in procedural due process. *Id.* However, the Supreme Court has clarified that “[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.” *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). “[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.” *Id.* n.12. Yet the district court—like Plaintiffs—jumped straight to procedural adequacy without first identifying any substantive entitlement.

The Supreme Court has held unequivocally that individuals may not assert “a procedural due process right in *someone else’s* legal proceeding.” *Muñoz*, 602 U.S. at 916. Plaintiffs’ “position suggests an entitlement to bring” family members “to the United States.” *Muñoz*, 602 U.S. at 910; *see* Opp.14-16. Plaintiffs, like the plaintiff in *Muñoz*, disclaim

that position, which would "would ordinarily trigger strict scrutiny—and it would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight." *Id.* at 911.

Plaintiffs also do not respond to Defendants' argument (at 20) that the district court failed to identify any procedural deficiencies. Instead, they claim, "[s]ince June 2025, the Government has improperly applied the Proclamations as "bars" to derivative asylees who are "otherwise eligible" to receive boarding foils. That is not the procedure they are entitled to expect." Opp.16. Like the district court did, Plaintiffs only take issue with the *result* of the process, not any underlying procedures. *See* Mot.20. Such a claim could only sound in *substantive* due process—something Plaintiffs explicitly disclaimed.

### D. The Proclamations are not unconstitutionally vague as applied.

The first prong of the void-for-vagueness analysis is not implicated here because the Proclamations do not proscribe any conduct for which Plaintiffs must have fair notice. Mot.21. And the Proclamations satisfy the second prong because they give clear guidance to the implementing agencies regarding follow-to-join asylees. *Id.* Plaintiffs appear to only

address the first prong, reasoning (at 17) that the Proclamations *do* proscribe conduct because (i) Plaintiffs are impacted by the entry bars and (ii) the Proclamations prohibit consular officers from issuing boarding foils. But neither situation is an example of *conduct* that Plaintiffs are proscribed from doing.

Moreover, the void-for-vagueness doctrine is a "component of due process" and thus requires Plaintiffs to first establish deprivation of a protected interest. *See Carolina Youth Action Project; D.S. by and through Ford v. Wilson*, 60 F.4th 770, 781 (4th Cir. 2023). Because they fail to do so, *see supra* p.10, the void-for-vagueness doctrine is unavailable. But even assuming Plaintiffs have a protected due-process interest, the State Department's established policy that the district court purported to vacate, and the individualized notices Plaintiffs received, supplied adequate notice of the policy. Disagreement over the interpretation of the Proclamations is not a constitutional vagueness problem.

## III. The equities favor a stay.

The Government is irreparably harmed every day the district court's vacatur remains in effect.

Plaintiffs cite (at 18) a D.C. Circuit decision that has since been stayed by the Supreme Court and in which the Supreme Court concluded the Government established irreparable harm from national-security concerns. *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the U.S.*, 609 U.S. ---, 2026 WL 2564318, at *3 (Aug. 31, 2026). In its decision, the Supreme Court relied on declarations submitted by the Government that similarly stressed national security concerns that would likely arise if the project were to be stopped. *Id* at. *8. Plaintiffs also cite (at 18) a District of Rhode Island decision, part of which has been stayed by the First Circuit, finding that the Government had met its burden to demonstrate irreparable harm in contrast to the district court decision on which Plaintiffs here rely. *Dorcas Int'l Inst. of R.I. v. USCIS*, 2026 WL 2364384, at *1 (1st Cir. Aug. 14, 2026).

These Plaintiffs would not be able to travel to the United States absent the district court's Order because of the President's determination that allowing aliens from these countries to enter the United States presents national security risks without the availability of more comprehensive vetting. Afghanistan specifically, was identified as one of several high-risk countries that have not yet corrected their vetting

deficiencies. 90 Fed. Reg. 24,998-99, 59,720-22. Without proper and thorough vetting procedures, harmful individuals are more likely to enter the United States, placing the country as a whole at risk. Much of Plaintiffs' opposition simply assumes their correctness on the merits, namely that the President did not intend to exclude follow-to-join asylees in the Proclamations—a proposition counsel for the United States expressly disputes.

Plaintiffs similarly allege that several families awaiting processing will also be harmed if a stay were granted based on "significant and irreversible steps in reliance on the district court's judgment." Opp. 21. However, Plaintiffs cannot rely on the district court's decision to allege harm. An erroneous decision lacks a legal backbone and cannot serve as the basis for injury, particularly where that erroneous decision would cause violation of consular non-reviewability principles. *See supra* p.5.

## CONCLUSION

This Court should enter an immediate administrative stay and then stay the district court's Order and Judgment pending appeal.

Dated: September 14, 2026

Respectfully submitted,


s/ Joseph McCarter
JOSEPH MCCARTER
TIA HOCKENBERRY
JESSE MONTES
JASON ZUBATA
Trial Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Sta.
Washington, D.C. 20044
(202) 746-8537
Joseph.A.McCarter@usdoj.gov

Attorneys for Appellants

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Director
Office of Immigration Litigation

JESSICA R. LESNAU
Senior Litigation Counsel

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27 and Fourth Circuit Rule 32-1(a), I certify that the text of this brief is double-spaced, proportionally spaced Century Schoolbook type; the footnotes are single-spaced, proportionally spaced Century Schoolbook type; and the brief contains 2,592 words, which does not exceed the 2,600-word limit for replies.

Dated: September 14, 2026

s/ *Joseph McCarter*
JOSEPH MCCARTER
Attorney for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system

Dated: September 14, 2026

s/ *Joseph McCarter*
JOSEPH MCCARTER
Attorney for Appellants