No. 26-2119

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

AA, et al.,
Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,
Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 1:25-cv-1819-AJT-WEF (Hon. Anthony J. Trenga)

**BRIEF OF AMICUS CURIAE PUBLIC CITIZEN**
**IN SUPPORT OF PLAINTIFFS-APPELLEES**

Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
azieve@citizen.org

*Attorneys for Amicus Curiae*

November 18, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

INTEREST OF AMICUS CURIAE .................... 1

SUMMARY OF ARGUMENT .................... 1

ARGUMENT .................... 3

I. The government's notion that section 706(2) does not authorize vacatur is contrary to the APA's text, its history, and the long-held view of the courts. .................... 3

II. The government's alternative argument that section 706(2) authorizes vacatur only as to the plaintiff is atextual and poses intractable practical problems. .................... 16

CONCLUSION .................... 24

CERTIFICATE OF COMPLIANCE .................... 25

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967) .......... 15, 23

*Action on Smoking & Health v. Civil Aeronautics Board*,
713 F.2d 795 (D.C. Cir. 1983) .......... 3

*Allina Health Service v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) .......... 15

*American Paper Institute v. EPA*,
660 F.2d 954 (4th Cir. 1981) .......... 15

*Bank of America, N.A. v. FDIC*,
244 F.3d 1309 (11th Cir. 2001) .......... 16

*Beecham v. United States*,
511 U.S. 368 (1994) .......... 11

*Biodiversity Legal Foundation v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) .......... 5

*Bryan v. Bellsouth Communications, Inc.*,
492 F.3d 231 (4th Cir. 2007) .......... 18

*Business Roundtable v. SEC*,
905 F.2d 406 (D.C. Cir. 1990) .......... 23

*Chamber of Commerce v. Department of Labor*,
885 F.3d 360 (5th Cir. 2018) .......... 20

*Columbia Gas Transmission Corp. v. FERC*,
404 F.3d 459 (D.C. Cir. 2005) .......... 9

*Corner Post v. Board of Governors of the Federal Reserve System*,
603 U.S. 799 (2024) .......... 4, 22, 23

*Data Marketing Partnership, LP v. Department of Labor*,
45 F.4th 846 (5th Cir. 2022) ........ 15

*Department of Commerce v. New York*,
588 U.S. 752 (2019) ........ 15

*DHS v. Regents of University of California*,
591 U.S. 1 (2020) ........ 14, 18, 20

*FEC v. Akins*,
524 U.S. 11 (1998) ........ 18

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1998) ........ 5

*Grand Trunk Corp. v. Surface Transportation Board*,
143 F.4th 741 (7th Cir. 2025) ........ 11

*Hall v. EPA*,
273 F.3d 1146 (9th Cir. 2001) ........ 16

*Harmon v. Thornburgh*,
878 F.2d 484 (D.C. Cir. 1989) ........ 16

*Humane Society of United States v. Kempthorne*,
579 F. Supp. 2d 7 (D.D.C. 2008) ........ 22

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ........ 22

*ICC v. Brotherhood of Locomotive Engineers*,
482 U.S. 270 (1987) ........ 10

*Illinois Public Telecommunications Ass'n v. FCC*,
123 F.3d 693 (D.C. Cir. 1997) ........ 16

*In re International Chemical Workers Union*,
958 F.2d 1144 (D.C. Cir. 1992) .......... 5

*Iowa League of Cities v. EPA*,
711 F.3d 844 (8th Cir. 2013) .......... 20

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .......... 3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 21

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) .......... 22

*Make the Road New York v. McAleenan*,
405 F. Supp. 3d 1 (D.D.C. 2019) .......... 16

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .......... 18

*Morgan v. United States*,
304 U.S. 1 (1938) .......... 13, 14

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto Insurance Co.*,
463 U.S. 29 (1983) .......... 15

*NLRB v. Noel Canning*,
134 S. Ct. 2550 (2014) .......... 17

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) .......... 18

*Owner-Operator Independent Drivers Ass'n v. Federal Motor Carrier Safety Administration*,
656 F.3d 580 (7th Cir. 2011) .......... 16

*Potomac Electric Power Co. v. ICC*,
702 F.2d 1026 (D.C. Cir. 1983) .......... 5

*Pacific Power & Light Co. v. Federal Power Commission*,
111 F.2d 1014 (9th Cir. 1940) .......... 9

*Panhandle Eastern Pipe Line Co. v. Federal Power Commission*,
324 U.S. 635 (1945) .......... 9

*Public Citizen v. Barshefsky*,
939 F. Supp. 31 (D.D.C. 1996) .......... 21

*Public Citizen v. DOJ*,
491 U.S. 440 (1989) .......... 18

*Public Citizen Health Research Group v. Auchter*,
702 F.2d 1150 (D.C. Cir. 1983) .......... 5

*Safe Water Power Corp. v. Federal Power Commission*,
124 F.2d 800 (3d Cir. 1941) .......... 9

*Sierra Club v. U.S. Army Corps of Engineers*,
909 F.3d 635 (4th Cir. 2018) .......... 15

*State Farm Fire & Casualty Co. v. United States ex rel. Rigsby*,
580 U.S. 26 (2016) .......... 17

*Stuart v. Laird*,
5 U.S. (1 Cranch) 299 (1803) .......... 17

*Tutun v. United States*,
270 U.S. 568 (1926) .......... 17

*United States v. Morgan*,
307 U.S. 183 (1939) .......... 14

*United States v. Taylor*,
596 U.S. 845 (2022) .......... 5

*United Steel v. Mine Safety & Health Administration*,
925 F.3d 1279 (D.C. Cir. 2019) ..... 4

*Whitman v. American Trucking Ass'n*,
531 U.S. 457 (2001) ..... 15

**Statutes**

5 U.S.C. § 702 ..... 11

5 U.S.C. § 703 ..... 11, 12

5 U.S.C. § 704 ..... 12

5 U.S.C. § 705 ..... 12

5 U.S.C. § 706 ..... 1, 5, 11, 12

5 U.S.C. § 706(1) ..... 5

5 U.S.C. § 706(2) ..... *passim*

15 U.S.C. § 825*l*(b) ..... 8

Administrative Orders Review Act of 1950,
ch. 1189, 64 Stat. 1129 (1950) ..... 10

Pub. L. No. 59-337, 34 Stat. 584 (1906) ..... 7

Pub. L. No. 74-333, 49 Stat. 803 (1935) ..... 8

**Legislative Materials**

*Final Report of the Attorney General's Committee on Administrative Procedure*,
S. Doc. No. 77-8 (1941) ..... 13

S. Doc. 79-248 (1946) .......... 12

**Federal Rules of Civil Procedure**

Rule 2 .......... 11

Rules 64–71 .......... 11

**Miscellaneous**

*Black's Law Dictionary* (12th ed. 2024) .......... 3, 13

*Black's Law Dictionary* (3d ed. 1933 & 4th ed. 1951) .......... 3

Fred Halbhuber, *A Remedy Inherited: State Law, Universal Vacatur, and the Meaning of "Set Aside,"* 78 Stan. L. Rev. Online 121 (2025) .......... 6, 10

James Hart, *Final Report of the Attorney General's Committee on Administrative Procedure*, 35 Am. Pol. Sci. Rev. 501 (1941) .......... 13

Richard Murphy, 33 *Federal Practice and Procedure* (Wright & Miller) (2d ed. & Apr. 2022 update) .......... 3

Mila Sohoni, *The Long History of the Universal Injunction*, 133 Harv. L. Rev. 920 (2020) .......... 17

## INTEREST OF AMICUS CURIAE[1]

Amicus curiae Public Citizen is a consumer advocacy organization with members in all 50 states. Public Citizen appears on behalf of its members before Congress, administrative agencies, and the courts to advocate for policies that benefit the public. It is often involved in litigation under the Administrative Procedure Act (APA) either challenging or defending agency actions.

Public Citizen submits this amicus brief to address the argument of Appellants Department of State, et al., that courts lack authority to vacate agency actions held unlawful under the APA, 5 U.S.C. § 706. As the amicus brief explains, that argument is contrary to the text and history of the APA, runs counter to countless court decisions, and poses intractable practical problems.

## SUMMARY OF ARGUMENT

Under section 706(2) of the APA, a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to

[1] This brief was not written in whole or in part by counsel for a party. No one other than amicus curiae or its counsel made a monetary contribution to the preparation or submission of this brief. Counsel for both parties have consented to its filing.

be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." For decades, justices, judges, regulators, regulated parties, and others have understood this provision to authorize reviewing courts to *vacate* unlawful agency action.

Recently, and in this case, the government has taken to arguing that the term "set aside" in section 706(2) does not authorize courts to vacate unlawful regulations, orders, or other agency actions. That view, however, is contrary to the APA's text and history. In addition, other agency review statutes make clear that "set aside" refers to vacatur. And the government's view runs counter to the long-held view of the courts, as reflected in countless court decisions going back decades. It also poses practical problems, making the beneficiaries of relief difficult to discern in cases of organizational plaintiffs, and providing some types of plaintiffs adversely affected by agency regulations no means of obtaining meaningful relief. Accordingly, the Court should reject the government's view.

## ARGUMENT

### I. The government's notion that section 706(2) does not authorize vacatur is contrary to the APA's text, its history, and the long-held view of the courts.

The APA mandates that the reviewing court "shall … hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *see Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (stating that "shall" "normally creates an obligation impervious to judicial discretion").[2] To "set aside" means to "vacate." *See Black's Law Dictionary* (12th ed. 2024) (defining "set aside" as "to annul or vacate"); *Black's Law Dictionary* (3d ed. 1933 & 4th ed. 1951) (defining "set aside" as "to cancel, annul, or revoke"); *id.* (defining "vacate" as "[t]o annul; to set aside" or "[t]o put an end to"); *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To 'vacate,' as the parties should well know, means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no

[2] *See also* Richard Murphy, 33 *Federal Practice and Procedure* (Wright & Miller) § 8381 (2d ed. & Apr. 2022 update) ("Generally speaking, where a petitioner persuades a reviewing court that an agency's action is defective due to errors of fact, law, or policy, the court should vacate that action and remand to the agency for further proceedings.").

authority or validity; *to set aside*.'" (emphasis added)). Thus, when a reviewing court determines that agency regulations are unlawful, "[t]he ordinary practice is to vacate." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (citing 5 U.S.C. § 706(2)).

Although courts, including the Supreme Court, have consistently stated otherwise, *see infra* pp. 9–10 & n.4, the government argues that section 706(2) does not authorize courts to vacate unlawful agency actions—and, indeed, that section 706 does not address remedies at all, Appellants Br. 53—but simply tells the reviewing court "to disregard that unlawful action in resolving the case," *id.* The government cites no judicial decision supporting its interpretation of section 706(2), and that interpretation is mistaken for several reasons. *See Corner Post v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 829 (2024) (Kavanaugh, J., concurring) (explaining the error in the government's position, "in light of the text and history of the APA, the longstanding and settled precedent adhering to that text and history, and the radical consequences for administrative law and individual liberty that would ensue if vacatur were suddenly no longer available").

**A.** To start, the government's argument is not supported by the text of section 706. Section 706 has two parts that speak to two different types of actions that "[t]he reviewing court shall" take: It shall (1) "compel agency action unlawfully withheld or unreasonably delayed, and" (2) "hold unlawful and set aside agency actions, findings, and conclusions found to be" problematic on one of the specified bases. The government's argument that section 706 does not address remedy cannot be reconciled with section 706(1), which plainly states the judicial *remedy* for unlawfully withheld or delayed agency action: an order compelling the action.[3] Section 706(1) belies the government's contention that section 706 does not address remedy. *See also United States v. Taylor*, 596 U.S.

[3] *See, e.g.*, *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1178 (9th Cir. 2002) (in a case under § 706(1), ordering the agency to complete the delayed action by a date certain); *Forrest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1998) (in a case under § 706(1), stating that when an agency fails to act by a statutory deadline, it has "unlawfully withheld" the action and the court must compel the agency to act); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (in a case under § 706(1), imposing a deadline for issuance of an agency rule unreasonably delayed); *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026 (D.C. Cir. 1983) (in a case under § 706(1), holding that the agency had unreasonably delayed disposition of the company's complaint and ordering the agency to reach a final decision within 60 days); *Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1158–59 (D.C. Cir. 1983) (in a case under § 706(1), ordering the agency to promulgate a notice of proposed rulemaking within 30 days).

845, 856 (2022) (noting "our usual rule of statutory interpretation that a law's terms are best understood by 'the company [they] kee[p]'" (alteration in original)).

Moreover, that the statutory term "set aside" speaks to remedy is further confirmed by the long history of use of that same term in other statutes, both before and after enactment of the APA. The term originated in state statutes, as the states pioneered regulation of railroad rates by administrative agencies and judicial review of agency orders approving or disallowing proposed rates. *See* Fred Halbhuber, *A Remedy Inherited: State Law, Universal Vacatur, and the Meaning of "Set Aside,"* 78 Stan. L. Rev. Online 121, 126 (2025). State judicial review statutes typically used "set aside" interchangeably with "vacate" and "annul" to describe the relief that courts were empowered to grant against unlawful agency action, and state courts applied those statutory terms accordingly. *See id.* at 126–31. Because the statutes described actions to be taken by courts in cases that were brought specifically for review of the lawfulness of agency ratemaking orders, they could not have been intended to incorporate the meaning of "setting aside" that the government advocates here. *See* Appellants Br. 53 (arguing that "set

aside" means "to disregard [the agency's] action in resolving the case"). When the sole issue before a court is whether an agency action is unlawful, the court cannot "disregard" that action in resolving the case. Instead, the court necessarily considers the agency action, determines its lawfulness, and, if it is held unlawful, declares it a nullity—that is, sets it aside.

In 1906, when Congress granted the Interstate Commerce Commission authority to enforce its own ratemaking orders and provided for judicial review to ensure that the agency would act lawfully, it adopted the term "set aside" used by the state statutes to describe the remedies available if an agency order were held unlawful. Specifically, the 1906 statute provided for suits in the United States circuit courts "to enjoin, set aside, annul, or suspend any order or requirement of the commission." Pub. L. No. 59-337, § 5, 34 Stat. 584, 592 (1906). The statute further instructed that an order of the ICC "shall continue in force" for the time prescribed in the order "unless the same shall be suspended or modified or set aside by the Commission *or be suspended or set aside by a court of competent jurisdiction*." *Id.* § 4, 34 Stat. at 589 (emphasis added). Together, these provisions left no doubt that setting aside an ICC

order was a form of relief for which an action for judicial review was brought, and that the effect of that relief was to deprive the agency's order of continued force.

In the decades that followed Congress's use of the term "set aside" to describe the relief available in a proceeding for judicial review of an ICC order, Congress repeatedly used the term "set aside" to authorize a court order nullifying an agency action subject to judicial review. For example, Congress enacted comprehensive amendments to the Federal Power Act in 1935, authorizing wholesale electric rate regulation by the Federal Power Commission (now the Federal Energy Regulatory Commission) and providing for judicial review of Commission orders. That landmark legislation, which quickly became a wellspring of judicial review proceedings, provided that a court of appeals before which a petition for review of a Commission order is brought "shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part." Pub. L. No. 74-333, § 212, 49 Stat. 803, 860 (1935) (adding § 313 to the Federal Power Act), *codified as amended at* 15 U.S.C. § 825*l*(b). The term "set aside" appears in a list of remedies and plainly refers to a remedy—

the remedy of vacating the order (which is the opposite of affirming it or leaving it in place as amended or modified).

Courts construed the statute accordingly as authorization to direct that unlawful orders be "set aside." *See, e.g.*, *Pac. Power & Light Co. v. Fed. Power Comm'n*, 111 F.2d 1014, 1018 (9th Cir. 1940) (ordering, upon finding a Commission order unlawful, that "[t]he order is set aside and the matter returned to the Commission for further consideration in harmony with this opinion."); *Safe Water Power Corp. v. Fed. Power Comm'n*, 124 F.2d 800, 809 (3d Cir. 1941) (ordering, after concluding that the Commission lacked jurisdiction to set certain rates, that "[t]he order of the Federal Power Commission is set aside as beyond its jurisdiction"); *see also Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 642 (1945) (stating that if the Commission's allocation of earnings "was unfair, the order must be set aside. If it was fair no reversible error is shown."). Down to the present, reviewing courts have continued to construe the statute to authorize courts to vacate unlawful Commission orders. *Col. Gas Transm'n Corp. v. FERC*, 404 F.3d 459, 463 (D.C. Cir. 2005) ("grant[ing] the petition and vacat[ing] the [agency] orders").

The Federal Power Act was no outlier. Between the enactment of the ICC judicial review provisions in 1906 and the enactment of the APA in 1946, Congress enacted at least 35 other federal statutes with judicial review provisions authorizing courts to "set aside" unlawful agency actions, often juxtaposing that form of relief with authorization to "affirm" lawful actions or "modify" actions that would be lawful as modified. *See* Halbhuber, *supra*, 78 Stan. L. Rev. Online at 124–25 n.20. When Congress incorporated the term "set aside" into the APA, therefore, it was using language that, in the context of judicial review, had a well-established meaning as authorization for a court to vacate or annul unlawful agency action.

Moreover, only a few years after enacting the APA, Congress underscored this meaning in enacting the Administrative Orders Review Act of 1950, ch. 1189, 64 Stat. 1129 (1950), commonly referred to as the Hobbs Act. The Hobbs Act provides for exclusive federal court of appeals jurisdiction over certain pre-enforcement challenges to agency actions governed by substantive APA standards, *see ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987), including section 706(2)'s description of the circumstances under which a reviewing court is to "set aside" agency

action, *see Grand Trunk Corp. v. Surface Transp. Bd.*, 143 F.4th 741, 746 (7th Cir. 2025). Specifically, the Hobbs Act gives the courts of appeals "exclusive jurisdiction to enjoin, set aside, [or] suspend (in whole or in part)" final orders, rules, and regulations of specified agencies. Sandwiching "set aside" between two indisputable remedies—"enjoin" and "suspend"—reflects that, in the context of court review of agency action under section 706, Congress uses the term "set aside" to refer to a remedy. *Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").

The government's contention that the APA does not address remedy in section 706, but instead in section 703, titled "Form and venue of proceeding," *see* Appellants Br. 50–51, is also untethered to both the APA's text and structure. "Form of proceeding" is not a term used to refer to remedy. *Compare* Fed. R. Civ. P. 2 (addressing "form of action"), *with id*. Rules 64–71 (addressing "remedies"). Furthermore, the APA's judicial review provisions (which were originally set forth in sequence as subsections of section 10 of the APA as enacted in 1946) follow a clear structure: Section 702 addresses the parties (who can sue and be sued);

section 703 addresses the form of a suit for judicial review and its proper venue; section 704 describes the types of agency action over which one can sue; section 705 addresses interim remedies; and section 706 addresses the scope of judicial review, including the standards of review and the final remedies to which they lead. The government's approach, reading the "form of proceeding" in section 703 to address remedy rather than how and where to plead a cause of action, destroys that logical progression.

**B.** The government is also incorrect that the APA's legislative history supports its view. *See* Appellants Br. 51. The document cited by the government, S. Doc. No. 79-248 at 36–37 (1946), discusses the "Form and Venue of Action" provision in terms of the "methods of review," *id.*, while explaining that the "Scope of Review" provision authorizes courts to "compel" and to "invalidat[e]" agency action, and rejecting the notion that "invalidation of agency action 'short of statutory right' is something new." *Id.* at 40. Far from supporting the government's argument, the document further evidences that decades of court decisions vacating unlawful agency actions properly understood the meaning of and intent behind section 706(2): to provide authority for courts to "invalidat[e],"

that is, set aside or vacate, the action. *See Black's Law Dictionary* (12th ed. 2024) (defining "vacate" as "[t]o nullify or cancel; make void; *invalidate*" (emphasis added)).

The government's view is also inconsistent with the 1941 Final Report of the Attorney General's Committee on Administrative Procedure, S. Doc. No. 77-8 (1941) (1941 Report)—a report described at the time as "the most thorough and comprehensive study ever made of Federal administrative procedure." James Hart, *Final Report of the Attorney General's Committee on Administrative Procedure*, 35 Am. Pol. Sci. Rev. 501, 501 (1941). As the 1941 Report makes clear, courts have long considered challenges to *both* the "legality of applying a regulation to a particular objector" *and* "the validity of the entire regulation." 1941 Report at 116. In the latter instance, "[a] judgment adverse to a regulation results in setting it aside." *Id.* at 117.

For example, *Morgan v. United States*, 304 U.S. 1 (1938), *cited in* 1941 Report at 88, challenged an order by the Secretary of Agriculture fixing maximum rates to be charged at the Kansas City Stockyards. The core of the case was the plaintiffs' allegation that the Secretary of Agriculture had adopted the rates without complying with the statute's

procedural requirements and that the order was arbitrary and unsupported by substantial evidence. *Morgan*, 304 U.S. at 14. The Court agreed that the agency's process was "defective" and held the agency's action "invalid." *Id.* at 21. In a follow-on case, the Court explained that its earlier decision had "set aside" the rates for "failure of the Secretary to follow the procedure prescribed by the statute." *United States v. Morgan*, 307 U.S. 183, 195 (1939). The Court clearly meant that the earlier decision had nullified the unlawful rates, not that it had "disregarded" the unlawful rates "in resolving the case before the court," Appellant's Br. 53. Indeed, the government's reading of "set aside" would have been nonsensical in the context of a case like *Morgan*, where the case before the Court was about the lawfulness of the rates, not some other issue that could be decided once the unlawful rates were "disregarded."

**C.** The government's reading also runs counter to *decades* of court decisions, from the Supreme Court, courts of appeals, and district courts across the country—including seminal cases of administrative law. *See, e.g.*, *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 9 (2020) (holding that the challenged agency action must be vacated where it violated the APA);

*Dep't of Commerce v. New York*, 588 U.S. 752, 766, 770–71 (2019) (affirming a district court's decision that "vacated" the challenged agency action and using "set aside" interchangeably with "vacate"); *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 471 n.4 (2001) (stating that if allegations that the EPA violated rulemaking requirements "could be proved, it would be grounds for vacating the [agency action], because the Administrator had not followed the law"); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 41 (1983) (clarifying that it is an "agency's action" itself which must be set aside if it is contrary to or in excess of agency authority); *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967) (explaining that "pre-enforcement challenge" by regulated parties "is calculated to speed enforcement" because "[i]f the Government prevails, a large part of the industry is bound by the decree; if the Government loses, it can more quickly revise its regulation").[4] By

[4] *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 639 (4th Cir. 2018) (vacating "in their entirety" agency actions found to be without statutory authority); *Am. Paper Inst. v. EPA*, 660 F.2d 954, 961, 965 (4th Cir. 1981) (stating that the court "must strike" agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "vacat[ing] challenged regulations"); *Data Mktg. P'ship, LP v. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The default rule is that vacatur is the appropriate remedy."); *Allina Health*

contrast, the government cites no precedential decision of any federal court in the 80-year history of the APA that adopts its construction of the term "set aside" in section 706(2).

## II. The government's alternative argument that section 706(2) authorizes vacatur only as to the plaintiff is atextual and poses intractable practical problems.

As a fallback position, the government suggests that section 706(2) may authorize vacatur but only as to the parties to the particular case. Appellants Br. 58. But support for that view "is nowhere in the statute," as then-Judge Jackson has explained. *Make the Road New York v. McAleenan*, 405 F. Supp. 3d 1, 67 (D.D.C. 2019), *rev'd on other grounds*,

---

*Serv. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014) (stating that "vacatur is the normal remedy" for an APA violation); *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 588 (7th Cir. 2011) ("When [the arbitrary and capricious] standard has not been met, it is necessary to vacate the agency's action."); *Hall v. EPA*, 273 F.3d 1146, 1161, 1164 (9th Cir. 2001) ("vacat[ing] [the] EPA's approval" of a permit as arbitrary and capricious); *Bank of America, N.A. v. FDIC*, 244 F.3d 1309, 1321 (11th Cir. 2001) (holding that when an agency "so fundamentally misunderstands the source of its authority" that it exceeds statutory limits, "the proper remedy is … to vacate the agency action"); *Ill. Pub. Telecomm. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir. 1997) (stating that "unsupported agency action normally warrants vacatur"); *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.").

962 F.3d 612 (D.C. Cir. 2020); *see also State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 36 (2016) (rejecting reading that has "no textual indication in the statute").

Importantly, such an atextual limitation is not required by Article III. "The Court has long relied upon historical practice by the federal courts to lend meaning to the notoriously terse phrases of Article III." Mila Sohoni, *The Long History of the Universal Injunction*, 133 Harv. L. Rev. 920, 269 (2020).[5] And here, the long history of federal courts vacating agency action held unlawful, *see supra* pp.17–18 & n.9, is indisputable. That the relief may benefit persons other than the plaintiff does not mean that it is barred by Article III: Article III does not authorize, let alone require, courts to deny a statutorily authorized form of relief that redresses a plaintiff's injury merely because the relief will also benefit others who suffer a comparable injury. *See Massachusetts v.*

[5] *See* Sohoni, *supra*, 133 Harv. L. Rev. at 926 n.37 (citing as examples *Tutun v. United States*, 270 U.S. 568, 576 (1926), and *Stuart v. Laird*, 5 U.S. (1 Cranch) 299, 309 (1803)); *see also NLRB v. Noel Canning*, 134 S. Ct. 2550, 2560 (2014) ("[T]his Court has treated practice as an important interpretive factor even when the nature or longevity of that practice is subject to dispute, and even when that practice began after the founding era.").

*EPA*, 549 U.S. 497, 522 (2007); *FEC v. Akins*, 524 U.S. 11, 23–25 (1998); *Pub. Citizen v. DOJ*, 491 U.S. 440, 449–50 (1989).

In this regard, the government's fallback argument that section 706(2) may authorize vacatur only as to the plaintiffs in a particular case poses intractable practical problems.

> [F]or example, how could this Court vacate the Rule with respect to the organizational plaintiffs in this case without vacating the Rule writ large? What would it mean to "vacate" a rule as to some but not other members of the public? What would appear in the Code of Federal Regulations?

*O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019). These problems would be particularly acute in the ratemaking context where the use of the term "set aside" to describe the relief available in judicial review proceedings originated. *See supra* pp. 8–9. In that setting, the government's contention that the setting aside of an unlawful order must be limited to the parties who challenged it would thwart statutory schemes crafted to ensure that every regulated party charges every customer the approved filed rate. *See Bryan v. Bellsouth Commc'ns, Inc.*, 492 F.3d 231, 234 (4th Cir. 2007).

The outcome would also be wholly inefficient. *DHS v. Regents of the University of California*, illustrates the point. In *Regents*, the Supreme

Court considered a challenge to the Acting Secretary of Homeland Security's rescission of the Deferred Action for Childhood Arrivals (DACA) program. The Court determined that "the rescission must be vacated." 591 U.S. at 9. Under the government's reading, however, the APA did not authorize the Supreme Court to vacate the agency's action. Instead, it could "set aside" the rescission only as to the parties to that case. As to the thousands of DACA recipients around the country who were not parties to the case, the rescission—under the government's view—would remain in effect, requiring each of the thousands of individual recipients separately to sue because DACA's rescission would remain in effect as to them, even after the Court's ruling that the rescission was unlawful.[6]

Moreover, trade associations frequently challenge agency rules under the APA. When they prevail, the scope of the court rulings would be difficult to discern. For instance, when the Chamber of Commerce

---

[6] In light of the government's position that courts lack authority under the APA to vacate unlawful agency rules and can bar enforcement of an unlawful rule as to the specific plaintiffs, courts could not rely on the government to respond to a ruling that "holds unlawful" an agency action by withdrawing the unlawful action or committing not to apply it to non-parties to the case.

successfully sued to challenge a Department of Labor rule concerning fiduciary obligations of financial service providers, the Fifth Circuit relied on section 706(2) to "vacate the rule." *Chamber of Commerce v. Dep't of Labor*, 885 F.3d 360, 388 (5th Cir. 2018). Under the government's view, the court had authority to vacate the rule only as to the plaintiff—the Chamber. The Chamber, however, is a membership organization. Presumably, then, under the government's approach, the rule could then not be applied to companies that were members of the Chamber but could be applied to other companies. Both the agency and the many current and future investors affected by the rule would thus need a Chamber membership list to know which companies were bound by the rule and which were not. The government's brief does not address the question whether the "set aside" in such a case would apply to then-current members only or to future members as well. Because trade groups often bring APA challenges on behalf of their members, the problems posed by the government's reading would arise frequently. *See, e.g.*, *Iowa League of Cities v. EPA*, 711 F.3d 844, 854 (8th Cir. 2013) (vacating EPA requirements concerning water treatment processes at municipally owned sewer systems).

Similarly, when membership organizations sued under section 706(2) to challenge a U.S. Trade Representative order unlawfully closing certain meetings to the public, in violation of the Federal Advisory Committee Act, *see Pub. Citizen v. Barshefsky*, 939 F. Supp. 31, 38 (D.D.C. 1996), the court vacated that order. Under the government's view, however, the result should have been that the order closing the meetings was vacated *only* as to the plaintiffs or their members, but that the order continued to authorize closing the meetings to everyone else.

In addition, the government's theory would have a significant impact on the standing of potential APA plaintiffs by eliminating redressability in many cases. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (stating that standing requires that the injury caused by agency action can be redressed by a favorable court decision). Under the Court's longstanding view that "set aside" in section 706(2) means "vacate" and authorizes courts to vacate challenged agency action, non-regulated entities, including individuals and organizations, may have standing to challenge rules under section 706(2).[7] *See Lujan v. Nat'l*

[7] *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (holding that a membership organization may sue on behalf of its

*Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990) (stating that final agency action "can of course be challenged under the APA by a person adversely affected—and the entire [program] insofar as the content of that particular action is concerned, would thereby be affected"). The government's view, however, would undercut the redressability prong of standing for non-regulated entities, as Justice Kavanaugh has explained. *See Corner Post*, 603 U.S. at 829, 832.

For example, environmental groups had standing to challenge under section 706(2) a final rule of the Fish and Wildlife Service that removed a population of gray wolves from the endangered species list. *Humane Soc'y of U.S. v. Kempthorne*, 579 F. Supp. 2d 7, 9, 10 n.4 (D.D.C. 2008). Ruling in favor of the groups, the court vacated the unlawful rule. *Id.* at 8. In the government's view, however, the judicial remedy could go no further than the plaintiffs. A remedy reinstating the wolves to the list only as to the plaintiffs (who posed no threats to the wolves), however, would have been meaningless. Redress required vacatur of the rule.

---

members where the members would otherwise have standing to sue in their own right; the interests that the organization seeks to protect are germane to its purpose; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit).

Likewise, under the government's view, the Business Roundtable would have lacked standing in *Business Roundtable v. SEC*, 905 F.2d 406 (D.C. Cir. 1990). There, the D.C. Circuit vacated as in excess of the agency's statutory authority a rule that barred national security exchanges from listing stock of corporations that nullified, restricted, or disparately reduced per share voting rights of common shareholders. *Id.* at 407. But the members of the plaintiff organization were individuals, *see* https://www.businessroundtable.org/about-us, not companies regulated under the rule. Therefore, if the court could have vacated the rule only with respect to its application to the plaintiff, the plaintiff would have had *no* redress at all because the rule would continue to apply to the regulated entities.

In many cases, then, vacatur is "essential to fulfill the 'basic presumption of judicial review' for parties who have been 'adversely affected or aggrieved' by federal agency action." *Corner Post*, 603 U.S. at 832 (Kavanaugh, J., concurring) (quoting *Abbott Labs.*, 387 U.S. at 140). The practical consequences, as well as the APA's text and history, and countless court decisions spanning decades of APA litigation before the

Supreme Court and lower courts, require rejection of the government's argument.

## CONCLUSION

For the foregoing reasons, this Court should reject the government's theory that courts lack authority to vacate agency actions held unlawful under the APA and affirm the decision below.

Respectfully submitted,

Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
azieve@citizen.org

*Attorneys for Amicus Curiae*

November 18, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 5,075 words. This brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Century Schoolbook in font size 14.